# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Chiya Lloyd, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-cv-00762-FJG |
| | ) |
| FedLoan Servicing LLC, et al., | ) |
|     Defendants. | ) |

## ORDER

Pending before the Court is Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment (Doc. No. 133). As an initial matter, Defendant Experian Information Solutions, Inc.'s ("Experian") request for oral argument will be denied. In addition, Plaintiff's request in her response that summary judgment be granted in her favor (despite not filing a motion for summary judgment against Defendant Experian) is summarily denied.

**I.  Background**

This case is brought under the Fair Credit Reporting Act, 18 U.S.C. §§ 1681 *et seq.* Plaintiff alleges that Experian violated the FCRA, causing Plaintiff hundreds of thousands of dollars in damages. Experian moves for summary judgment, arguing that it reasonably relied on co-defendant FLS to accurately report information about its borrower, and conducted a reasonable reinvestigation of plaintiff's complaints.

**II.  Facts[1]**

---

[1] The Court has omitted conclusions of law and unsupported allegations of fact from its statement of facts.

Defendant Experian is a consumer reporting agency ("CRA") within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and, as such, regularly issues consumer reports as defined by 15 U.S.C. § 1681a(d). Defendant FedLoan Servicing ("FLS") is Plaintiff's student loan servicer and furnished information to Experian regarding the payment history on Plaintiff's student loan accounts. In or around August 2019, FLS furnished information to CRAs Experian, Trans Union, and Equifax that Plaintiff had been 90 days late on nine student loan accounts during the months of January and February 2018 and, for seven of the accounts, had also been 90 days delinquent in June 2019.

Furnishers such as FLS provide information regarding borrowers' accounts on a monthly basis through batch transmissions of account data. (Ex. A, Rogers Dep. 130:19-131:17).[2] Before updating a consumer's file, Experian's systems apply internal checks to ensure that information displays properly and is matched to the correct consumer. (Id., 16:14-18-6; 130:19- 131:17). Because Experian processes a large quantity of information

---

[2] In her response to the motion for summary judgment, plaintiff objects, stating that "a mere citation to oral testimony does not establish the absence of a genuine dispute that this is not how FLS furnishes information to CRA's [sic]." Doc. No. 136, ¶¶ 5-7. However, as noted by Defendant Experian in its reply, Local Rule 56(c)(1) requires a party controverting a movant's statement of facts to "properly support its denial in accordance with Fed. R. Civ. P. 56(c)," which requires a party controverting a fact to "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute[.]" If a fact is not controverted in accordance with the Local Rules, "the fact is deemed admitted for the purpose of summary judgment." Sheppard v. U.S. Dep't of Just., No. 17-CV-1037-ODS, 2019 WL 3577699, at *6 (W.D. Mo. Aug. 6, 2019). Plaintiff's mere statement that she controverts this fact, without providing a citation to other parts of the record or making a showing that the materials cited do not establish the absence of a genuine dispute, is insufficient under the Rules and therefore these facts will be deemed admitted.

on a monthly basis, Experian relies on furnishers such as FLS to provide it with accurate information. (Id. at 16:12-17).

Plaintiff learned that each of the CRAs included the delinquencies reported by FLS in her credit file when she received email alerts from multiple credit monitoring services. (Ex. B, Chiya Lloyd Dep. I 68:25-69:4). Plaintiff reviewed these delinquencies on her Experian credit report on or about August 12, 2019. (Id., 66:25-68:1; Ex. C, Consumer Disclosure of August 2019). Plaintiff's August 12, 2019, credit report also showed that Plaintiff had a tenth FLS account with a recent balance of $63,082 that was reporting as "Open/Never Late," and others had been refinanced and closed. (Ex. C, Consumer Disclosure of August 2019). Plaintiff already was pursuing FCRA litigation against Trans Union and Equifax at the time and believed that those CRAs were "us[ing] my consumer reports as a bargaining tool" in an upcoming mediation and that they had conspired with Experian, a non-party to the litigation, to do so. (Ex. B, Chiya Lloyd Dep. I 72:14-25).

Plaintiff contacted Experian on or about September 2, 2019[3] to dispute the accuracy of the status and payment history of the nine delinquent FLS accounts. (Ex. A, Rogers Dep. 76:8-11). Experian maintains detailed procedures for responding to consumer disputes, including step-by-step instructions for processing specific categories of disputes such as those stating an account was never late and those related to student loans. (See Ex. I; Disputes Manual).[4] For all disputes, Experian's agents must consider

---

[3] Because Plaintiff entered a comment and uploaded documents through separate web portals, Experian's systems registered Plaintiff as making separate disputes on September 2 and September 3, respectively. Experian treated these as a single dispute when conducting its reinvestigation, and, for ease of reference, refers to them as a single dispute here. (Ex. A, Rogers Dep. 62:25-64:7; 76:8-77:12).

[4] In response to this sentence, Plaintiff asserts that she does not controvert that Experian maintains procedures but controverts whether those procedures were reasonable and

3

Case 4:19-cv-00762-FJG   Document 143   Filed 08/02/21   Page 3 of 11

any relevant information provided by the consumer, "[w]hether it is a document or a 'story' provided by the consumer either on a call or in the consumer's correspondence." (Id.). Experian also maintains detailed procedures for assessing the authenticity and contents of "proof documents" provided by consumers to substantiate their disputes. (See Ex. J, Proof Document Manual). In some instances, Experian can internally update its reporting based solely on documents provided by the consumer. (Ex. A, Rogers Dep. 57:18-24). Experian considers a variety of factors when determining whether an internal update is appropriate, including the nature of the document received, whether it appears to have come from the furnisher, and whether account numbers and balances match information on file. (Id., 57:16-58:8). When Experian is unable to internally update a consumer's account based on a consumer's documentation, Experian notifies the furnisher of the dispute via an Automated Consumer Dispute Verification ("ACDV"), which includes a description of the dispute and information about the disputed account, and also provides with the ACDV any documents, comments, or other information provided by the consumer. (Id., 57:18-24). After the furnisher investigates the dispute and submits and ACDV response, Experian updates its reporting to reflect new or different information provided by the furnisher in its ACDV response. (Id., 57:12-15).

Plaintiff's September 2, 2019, dispute included a comment stating "Any and all late remarks are factually inaccurate. See proof provided." as well as documents, including (1) an August 2, 2019, FLS forbearance letter; and (2) a transaction history showing

---

followed in this case. She further indicates that the materials cited by Defendant Experian "do not eliminate the existence of a dispute." However, as before, Plaintiff has cited to nothing in the record indicating that alternate procedures were followed in this case, and given Plaintiff's failure to cite to alternate facts, the Court deems this paragraph admitted.

payment, interest, and balance information regarding an FLS account. (Ex. A, Rogers Dep., 62:21-64:4; 76:8-77:12; Ex. D, Sept. 2 Dispute Documents). Experian reviewed Plaintiff's comment and supporting documentation and determined that Plaintiff's accounts could not be updated without additional information from FLS. (Ex. A, Rogers Dep. 57:16-58:8). Experian notified FLS of Plaintiff's dispute on September 7, 2019, by sending ACDVs for each of the accounts disputed by Plaintiff. (Ex. A, Rogers Dep. 32:6-33:3; 46:20-47:2). Each of the ACDVs contained the account information Experian had on file, including information concerning Plaintiff's reported 90-day delinquencies. (Ex. A, Rogers Dep. 32:9 34:15; Ex. U, September ACDVs). Experian included Plaintiff's comment and all documents provided by Plaintiff with the ACDVs. (Ex. A, Rogers Dep. 77:6-12).

In response, FLS provided updated reporting, in which it showed that none of Plaintiff's student loan accounts had been delinquent in January or February 2018, but which indicated that seven of the loans were delinquent in June 2019.[5] Thereafter, Experian notified Plaintiff of the results of its reinvestigation on September 24, 2019. Plaintiff contacted Experian again on September 26, 2019, to dispute the June 2019 delinquencies that had been verified by FLS. Plaintiff did not include new documentation with her dispute but attached the same August 2, 2019, FLS forbearance letter. Experian again reviewed Plaintiff's dispute and supporting documentation, then transmitted the documentation to FLS with another set of ACDVs. This time, FLS responded by updating its reporting of six of the seven disputed accounts to show that they were never late, but

---

[5] Plaintiff, in response to this statement of fact, argues that the seven loans were not delinquent in June 2019; however, it is uncontroverted that was what FLS reported to Experian.

still reported that one of Plaintiff's accounts was delinquent in June 2019.[6] Experian notified Plaintiff of the dispute results on October 17, 2019. In February 2020, after the filing of this lawsuit, FLS updated the account history as to the one account that had been reported as delinquent in June 2019 to reflect that it was not delinquent at that time.

**III.   Standard**

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

**IV.   Analysis**

---

[6] Plaintiff again asserts that the reporting of one account being delinquent was incorrect; however, she does not dispute that this is what FLS reported to Experian.

Defendant Experian requests the Court enter summary judgment on the following bases: (1) Plaintiff cannot show that Experian reported inaccurate information; (2) Plaintiff cannot show that Experian failed to follow reasonable procedures; (3) Plaintiff cannot show that Experian failed to conduct a reasonable reinvestigation; (4) Plaintiff cannot show that Experian caused her actual damage; and (5) Plaintiff cannot show that Experian willfully violated the FCRA. The Court finds that it only needs to consider Defendant Experian's second and third arguments in ruling this motion.

A. Alleged Failure to Follow Reasonable Procedures

The Fair Credit Reporting Act ("FCRA") requires Consumer Reporting Agencies ("CRAs"), such as Experian, to "follow reasonable procedures to assure the maximum possible accuracy" of the information they report. 15 U.S.C. § 1681e(b). When examining this provision, courts have routinely held that CRAs are entitled to rely on furnishers (such as FLS in this instance) to provide accurate credit information. See Sarver v. Experian Info. Sols., 390 F.3d 969, 972 (7th Cir. 2004) (noting that Experian processes billions of monthly updates from tens of thousands of sources relating to billions of accounts belonging to hundreds of millions of consumers; further noting that, "In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily."); Murphy v. Midland Credit Mgmt., Inc., 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006) (granting summary judgment on plaintiff's 15 U.S.C. § 1681e(b) claim as plaintiff "has not put on any evidence that [the CRA] knew or should have known that the information it received was unreliable or that any type of systematic problem existed.");

McCann v. CareerBuilding Employment Screening, LLC, No. 2:18-CV-04105-MDH, 2018 WL 3978994, at *3 (W.D. Mo. Aug. 20, 2018) (finding that the CRA did not have a duty to investigate beyond the contents of public records). Defendant Experian argues that plaintiff has put forth no evidence that FLS is the source of "prevalent unreliable information," Sarver, 390 F.3d at 972, or that a "systematic problem existed," Murphy, 456 F.Supp. 2d at 1089. Furthermore, although Plaintiff argued in the operative Complaint that Experian ought to have procedures "to catch the simple logical flaw that a consumer cannot possibly be 90+ days late when Experian itself has a clear report that the previous 12+ months were on time" (see Doc. No. 83, Amended Complaint, ¶ 95), Defendant Experian notes that many furnishers, including FLS, choose to not report delinquencies to CRAs until the borrower is 90 days late, providing consumers with a grace period. See Doc. No. 134, Ex. A, Rogers Depo. at 120:6-13. Defendant Experian indicates that this is a consumer-friendly choice made by furnishers; otherwise, consumers would have more frequent reporting of 30-, 60-, and 90-day delinquencies.

In response, Plaintiff Lloyd argues that over the course of her credit disputes, Defendant Experian should have learned that FLS had lost its credibility as a reputable creditor, and that FLS's repeated failure to correct its errors should have put Defendant Experian on notice that it was obligated to do more than act as an innocent bystander. Plaintiff suggests that Experian had a duty to ensure maximum possible accuracy, and ought to have sought additional information from FLS beyond what had been provided in its ACDV responses. Plaintiff further argues that Experian failed to exercise reasonable procedures by not contacting her and explaining what additional information it needed from her to resolve her claims. Plaintiff claims that, viewing the facts in the light most

favorable to her, a jury could find that Experian ought to have known (based on plaintiff's disputes and from the changing data provided by FLS in relation to plaintiff's disputes) that FLS was providing prevalent unreliable information.

However, as noted in Defendant Experian's reply suggestions, updates with alleged errors in response to a single consumer's disputes are not the type of "systematic problem" that results in liability under Murphy and Sarver. See Murphy, 456 F. Supp. 2d at 1089; Sarver, 390 F.3d at 972. As discussed by Experian, if Plaintiff's proposal was the law, every furnisher would necessarily be considered unreliable simply based on any consumer's dispute, regardless of the grounds for the dispute. As multiple other courts have found, this is a result that is not consistent with the FCRA. See Perry v. Experian Info. Sols., Inc., No. 05-cv-1578, 2005 WL 2861078, at *8 (N.D. Ill. Oct. 28, 2005); Benson v. Trans Union, LLC, 387 F. Supp. 2d 834, 842 (N.D. Ill. 2005). Plaintiff has not demonstrated systematic problems in the data furnished by FLS to Experian; instead, she has only presented evidence as to her own disputes, which were eventually resolved in her favor. Furthermore, to the extent that Plaintiff argues that Defendant violated some duty to request additional information from her, Defendant notes that it contacted Plaintiff following each of her two disputes, informing her of changes made to her credit report and detailing how she could resolve remaining disputed issues.

The Court concludes that Plaintiff has failed to demonstrate that Experian did not follow reasonable procedures under the FCRA in resolving her disputes. Therefore, Defendant Experian's motion for summary judgment is **GRANTED** on this issue.

**B.     Alleged Failure to Conduct a Reasonable Reinvestigation**

In addition to the duty to follow reasonable procedures, the FCRA requires CRAs to "conduct a reasonable reinvestigation" when a consumer disputes the information in her credit report as inaccurate or incomplete. 15 U.S.C. § 1681i(a)(1). The CRA's reinvestigation should follow the following steps: the CRA must review all relevant information provided by the consumer; promptly notify the furnisher of the dispute; provide the furnisher with all relevant information; modify or delete inaccurate or unverifiable information; and notify the consumer of the results of the reinvestigation. 15 U.S.C. § 1681i(a)(2)-(6). Here, Defendant Experian argues that it completed all of the proper steps in its reinvestigation. In addition, Experian notes that "[c]ourts have emphatically held that the FCRA does not impose strict liability on credit reporting agencies." Campbell v. Experian Info. Sols., Inc., No. 08-4217-CV-C-NKL, 2009 WL 3834125, at *4 (W.D. Mo. Nov. 13, 2009) (citing Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir.1979)). Instead, it is the Plaintiff's burden to demonstrate that the CRA's reinvestigation was unreasonable in some way.

Plaintiff argues that Experian's reinvestigation was unreasonable because CRAs should not simply parrot the responses of the furnisher (here, FLS), and instead should in some instances go beyond the furnisher's provided information to determine whether it is accurate. See, e.g., Cushman v. Trans Union Corp., 115 F.3d 220, 224-25 (3d Cir. 1997); Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir.1993). However, as noted by Defendant Experian, the out-of-circuit cases cited by Plaintiff in support of this proposition are distinguishable in that most of them originated prior to Congress's 1996 amendment of the FCRA in order to impose liability on furnishers, who as parties to the underlying transactions are in a better position than CRAs to verify the facts underlying a given credit

transaction. See S. REP. 103-209, 6 (available at 1993 WL 516162). Moreover, several of Plaintiff's cases involve failure of the CRAs to investigate publicly available information, such as bankruptcy discharges. See, e.g., Cairns v. GMAC Mortg. Corp., No. CIV 04-1840-PHX-SMM, 2007 WL 735564, *5-6 (D. Ariz. March 5, 2007); White v. Trans Union, LLC, 462 F.Supp.2d 1079, 1083 (C.D. Cal. 2006). The facts here are distinguishable, as no publicly available information indicates whether Plaintiff was delinquent in her student loan obligations – that information resides only with FLS. Finally, Plaintiff does not point to any evidence, other than her own say-so, that Defendant's reinvestigation was unreasonable. Just because the reinvestigation did not automatically result in a favorable outcome for Plaintiff does not mean that the reinvestigation was unreasonable.

For the reasons stated by Defendant Experian, therefore, Defendant's motion for summary judgment is granted on this basis as well.

**V.   Conclusion**

Therefore, for the foregoing reasons, Defendant Experian's Motion for Summary Judgment (Doc. No. 133) is **GRANTED.** Plaintiff's claims against Defendant Experian are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Date: August 2, 2021                                                  S/ FERNANDO J. GAITAN, JR.
Kansas City, Missouri                                                 Fernando J. Gaitan, Jr.
                                                                      United States District Judge